UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 2:21-mc-000178 |
| ) | |
| WARBURG PINCUS LLC, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER
DENYING PETITIONER'S MOTION TO COMPEL AND
GRANTING IN PART AND DENYING IN PART MOTIONS TO SEAL**
(Docs. 1, 2, 4, 13, 14)

The government seeks to compel Respondent Warburg Pincus LLC ("Warburg") to produce an email message (the "Subject Email"), which Warburg asserts is attorney-client privileged. Pending before the court are the government's motion to compel and four motions to seal. (Docs. 1, 2, 4, 13, & 14.) The court previously granted the motions to seal on a temporary basis and ordered the entire docket to be sealed. (Docs. 3, 5, & 16.)

On March 15, 2022, the court held a hearing on the pending motions. It ordered the parties to meet and confer regarding documents and information that could be removed from the docket. On March 29, 2022, the parties submitted a joint letter to the court regarding their meet and confer efforts, at which time the court took the pending motions under advisement.

The government is represented by Assistant United States Attorneys Lauren Almquist Lively and Owen C.J. Foster. Respondent is represented by Ian P. Carleton, Esq., Meredith J. Kingsley, Esq., and William H. Jordan, Esq.

**I.   Striking Extraneous Material.**

The parties have agreed to strike the following material as extraneous to the

court's resolution of the pending motions: Exhibits 2 through 8 and 17 of the government's motion to compel (Docs. 1-3 to 1-9 & 1-18); Exhibit 8 of the government's reply in support of its motion to compel (Doc. 22-9); Exhibit A to Warburg's response to the government's motion to seal (Doc. 12-1); and Exhibits 1 and 2 of the government's opposition to Warburg's cross motion to seal (Docs. 21-1 & 21-2). The parties have also agreed to remove Exhibit 3 of the government's opposition to Warburg's cross motion to seal (Doc. 21-3) and replace it with limited excerpts which have been submitted to the court. Pursuant to the parties' stipulations, the court hereby STRIKES Docs. 1-3 to 1-9, 1-18, 12-1, 21-1 to 21-3, and 22-9 from the record. The parties are hereby ORDERED to file their replacement version of Doc. 21-3 on the docket.

Warburg further requests that the court strike Exhibits 9 and 15 of the government's motion to compel (Docs. 1-10 & 1-16) and Exhibits 1 through 4 of the government's reply in support of its motion to compel (Docs. 22-2 to 22-5) because they are "extraneous" and have "no bearing" on the motion to compel. The government opposes Warburg's request. Because the parties do not agree and "motions to strike material *solely* on the ground that the matter is impertinent and immaterial are disfavored," the court declines to strike these exhibits. *Brown v. Maxwell*, 929 F.3d 41, 52 n.42 (2d Cir. 2019) (emphasis in original) (internal quotation marks and citations omitted). The court will, however, consider whether these documents should remain sealed.

## II.    Factual and Procedural Background.

Modernizing Medicine, Inc. ("ModMed"), a healthcare company of which Warburg owns "approximately 40 percent[,]" (Doc. 14 at 1), is a defendant in a *qui tam* action alleging violations of the federal healthcare anti-kickback statute, 42 U.S.C. § 1320a-7b (the "Anti-Kickback Statute"). *See* First Amended Complaint at 49-52, *United States v. Modernizing Med., Inc.*, No. 17-cv-00179 (D. Vt. May 27, 2021), ECF 19 at 50-53. ModMed was previously a defendant in a *qui tam* action with similar allegations in the Middle District of Tennessee which was dismissed without prejudice to the government. *See* Stipulated Order of Partial Dismissal, *United States v. Miraca Life*

*Scis., Inc.*, No. 16-cv-01355 (M.D. Tenn. May 23, 2019), ECF 48.

On February 4, 2020, the government issued an administrative subpoena to Warburg pursuant to 18 U.S.C. § 3486(a) seeking certain documents related to ModMed. On September 11, 2020, Warburg produced eighty-seven documents, including the Subject Email, which reflects advice from outside counsel. Warburg also produced a privilege log containing 195 entries, which indicated that six other versions of the Subject Email had been withheld pursuant to the attorney-client privilege.

Warburg's production process was handled by outside counsel and involved both attorneys and paralegals. Warburg worked with the government to identify search terms and used a computer platform to identify responsive documents, which were then reviewed for privilege by attorneys. A contracted staff attorney reviewed each of the eighty-seven documents produced, and a partner reviewed the documents withheld for privilege.

Boying Shui, a Warburg employee, sent the Subject Email on February 14, 2017 at 9:18 p.m. to update the Warburg team working on the ModMed deal in advance of a telephone conference. Mr. Shui is not an attorney and is not an executive at Warburg. At the time, he was a junior analyst working on the acquisition of a stake in ModMed. The Subject Email included an earlier email from Amr Kronfol, a Warburg executive, that discussed a legal review by Warburg's outside counsel related to ModMed and summarized outside counsel's legal advice. Mr. Kronfol also discussed Warburg's valuation of ModMed and attached a slide deck of materials related to that valuation marked confidential.

Mr. Shui intended to send the Subject Email to Mark Colodny, an employee of Warburg. Instead, he sent it to Mark Fleisher, general counsel of ModMed. Mr. Shui realized his mistake within minutes and attempted to recall the Subject Email but was unable to do so. By 9:46 p.m. of that same day, Mr. Shui had called Attorney Fleisher and informed him the email was sent by mistake. Attorney Fleisher told Mr. Shui he had deleted the Subject Email without reading it.

Mr. Shui memorialized his efforts to recall the Subject Email in two emails to

other Warburg employees. The first stated: "I f[']d up—this went to Mark Fleisher. Have issued a recall on message and trying to figure out how to recall[.]" (Doc. 1-13.) The second stated: "I screwed this one up—below message went to Mark Fleisher instead of Mark Colodny. Tried recalling email, which failed, caught Mark Fleisher on the phone immediately after. He indicated that he deleted the message without reading, but wanted to be upfront about this so we can run damage control as necessary. Will personally follow up with Mark afterwards to apologize again." (Doc. 1-14.) Mr. Kronfol responded to the second message, telling Mr. Shui, "Let it sit. Don't bring it up in any way. These things happen." *Id.*

At 10:07 p.m., Mr. Shui sent a follow-up email to the Warburg team advising them not to reply to the original email chain because of the inadvertent inclusion of Attorney Fleisher. Mr. Shui believed the Subject Email was confidential because it contained valuation information. At the time, he was unaware of its alleged attorney-client privileged status.

On February 12, 2021, during a deposition of Mr. Kronfol, the government used the Subject Email in its examination of the witness. Warburg asserted that the Subject Email was privileged and had been inadvertently produced. The next business day, February 15, 2021, Warburg's counsel provided the government with detailed facts regarding its inadvertent disclosure to Attorney Fleisher by Mr. Shui and Mr. Shui's efforts to redress that disclosure. Warburg represented that the Subject Email "was mistakenly marked for production by our review team at [Alston & Bird LLP]" because the reviewing attorney noted it was sent to Attorney Fleisher and "did not see the [Subject Email] in context with the other emails showing the inadvertent waiver and immediate clawback by Mr. Shui." (Doc. 1-12 at 3.)

ModMed, through its counsel Ropes and Gray LLP, later produced the Subject Email to the government. Contrary to his representation to Mr. Shui, Attorney Fleisher had not deleted it because it was subject to a litigation hold.

On December 21, 2021, the government moved to compel production of the Subject Email, alleging it was not privileged. The government redacted the Subject Email

4

and references to it. In addition, the government redacted information related to its ModMed investigation to prevent its disclosure to Warburg. Although the government claims that the redactions in its motion were "appropriate and more than adequate to protect Warburg's privilege claim[,]" it filed a motion to seal its filings contemporaneously with its motion to compel "out of an abundance of caution[.]" (Doc. 2 at 1.) The court sealed the government's motion to compel and its accompanying exhibits to afford Warburg an opportunity to review the motion and, "if necessary, assert that additional redactions are required to adequately protect its privilege claim[.]" (Doc. 5.)

On January 7, 2022, Warburg moved to extend the existing seal of the government's motion to compel and its exhibits (Doc. 13) and cross-moved to seal the entire docket to protect its privacy interests pending the completion of the government's investigation of ModMed (Doc. 14). Warburg also challenged the government's investigative redactions. On January 11, 2022, the court ordered the case remain sealed until the court resolved the pending motions.

On March 15, 2022, the court required the parties to meet and confer regarding documents and information extraneous to the court's resolution of the pending motions that could be removed from the docket. Also on March 15, 2022, the government filed notice of its election to partially intervene in the *qui tam* action against ModMed in this District. On March 24, 2022, the initial Complaint, the First Amended Complaint, and the government's notice of election to partially intervene were unsealed in the *qui tam* action.

### III. Conclusions of Law and Analysis.

#### A. Whether the Subject Email Is Attorney-Client Privileged.

Because this case relates to alleged violations of federal law, "[t]he common law—as interpreted by United States courts in light of reason and experience—governs a claim of privilege[.]" Fed. R. Evid. 501. Under federal common law,

> [t]he broad outlines of the attorney-client privilege are clear: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently

5

> protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984) (internal quotation marks omitted). The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it. *See United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). The attorney-client privilege "serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1990, 85 L.Ed.2d 372 (1985). However, since the attorney-client privilege "stands in derogation of the public's 'right to every man's evidence, . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Horowitz*, 482 F.2d 72, 81 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973) (quoting 8 Wigmore, Evidence §§ 2192, 2291 at 70, 554 (1961)); *see also University of Pennsylvania v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990).

*United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997).

The government argues that the Subject Email is not attorney-client privileged because it was never designated as such or marked confidential prior to its disclosure. As neither label is controlling, this argument is unpersuasive. *See United States v. Gangi*, 1 F. Supp. 2d 256, 265, 265 n.5 (S.D.N.Y. 1998) (treating labeling of documents as only one possible precaution against disclosure in analyzing waiver). The Subject Email contains a Warburg executive's summary of legal advice received from outside counsel and was intended to be sent only to Warburg employees working on the transaction to which the advice related. *See United States v. Moscony*, 927 F.2d 742, 752 (3d Cir. 1991) ("A communication is confidential if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client[.]") (internal quotation marks and citation omitted).

The attorney-client privilege covers "full and frank legal advice to the employees who will put into effect the client corporation's policy[,]" not just to those executives "who officially sanction the advice[.]" *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). For that reason, "the privilege protects from disclosure communications among

6

corporate employees that reflect advice rendered by counsel to the corporation." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (citations omitted). "A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation." *Id.* (internal quotation marks and citation omitted). The Subject Email's intended recipients were a select group of Warburg employees working on a specific transaction, and it communicated information marked as confidential. Warburg has satisfied its burden to establish the Subject Email falls within attorney-client privilege. As a result, the only issue before the court is waiver.

### B. Whether Warburg Waived Its Attorney-Client Privilege.

The government contends Warburg waived its attorney-client privilege by failing to keep the Subject Email confidential and producing it during discovery. Warburg counters that any disclosures were inadvertent, it immediately acted to redress them, and it did not intend to waive its privilege.

"The attorney-client privilege is waived if the holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship." *Pure Power Boot Camp v. Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 563 (S.D.N.Y. 2008) (citations omitted). "[A] party who seeks to uphold the privilege must take affirmative measures to maintain the confidentiality of attorney-client communications." *Id.* (collecting cases). "The general rules governing waiver are more complicated when the issue arises in the context of corporate entities," *In re Grand Jury Proc.*, 219 F.3d 175, 183 (2d Cir. 2000), because, although the corporation itself is the privilege holder, "entities must act through agents[.]" *Teamsters*, 119 F.3d at 214.

Whether an agent has waived a corporation's privilege must be "decided by the courts on a case-by-case basis" in light of "the specific context in which the privilege is asserted." *In re Grand Jury Proc.*, 219 F.3d at 183. The Second Circuit has held that the testimony of a corporate *officer* "may impliedly waive [a corporation's] privilege" but declined "to adopt a per se rule that a corporate officer's waiver in testimony . . . be

7

attributed to the corporation when it has asserted its privilege and has not otherwise lost it." *Id.* at 185-86. District courts must be "guided primarily by fairness principles" and "carefully weigh the circumstances[.]" *Id.* at 185-86. In light of the Second Circuit's approach to waiver by corporate officers in sworn testimony, it is doubtful whether, in fairness, an inadvertent, extrajudicial disclosure by a junior employee could waive a corporation's privilege where there is no evidence of consent to disclose by the privilege holder. The government cites no authority for a waiver in these circumstances and the court has found none.

### 1.     Mr. Shui's Disclosure to Attorney Fleisher.

Warburg, the holder of the privilege, did not consent to Mr. Shui's inadvertent disclosure to Attorney Fleisher. *See Teamsters*, 119 F.3d at 215 (holding privilege "belongs to the corporation, not to the individual employee"). Mr. Shui immediately took "affirmative measures" to recall the Subject Email, and Attorney Fleisher represented that he had deleted it without reading it. *Pure Power Boot Camp*, 587 F. Supp. 2d at 563. Warburg had every reason to rely on this representation.

Mr. Shui and others at Warburg treated the Subject Email as confidential, and, contrary to the government's assertions, it is not dispositive that Mr. Shui, who was not an attorney or executive, did not know the Subject Email was privileged. *Cf. G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533, 535 (S.D.N.Y. 2001) (noting "it is unrealistic to think that [an employee] will know what information or communications are privileged" and "unrealistic to expect even the best-intentioned lay person to be able to safeguard the attorney-client privilege").

Although Mr. Shui's "care in addressing his email was hasty and imperfect[,]" *Multiquip, Inc. v. Water Mgmt. Sys. LLC*, 2009 WL 4261214, at *5 (D. Idaho Nov. 23, 2009) (footnote omitted), he did everything in his power to rectify his error as soon as possible. *See United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) ("Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents.") (internal quotation marks and citation omitted);

*Maldonado v. New Jersey ex rel. Admin. Off. of Cts.*, 225 F.R.D. 120, 129 (D.N.J. 2004) ("Persuasive precedent from other jurisdictions support the determination that the attorney-client privilege can remain intact despite a one-time leak of privileged information.") (collecting cases).

In the unusual facts and circumstances of this case, the court finds Mr. Shui's inadvertent disclosure did not waive Warburg's attorney-client privilege.

### 2. Warburg's Production to the Government.

The government next contends that Warburg waived its privilege by producing the Subject Email to the government in response to the government's administrative subpoena. Waiver in this context is governed by Fed. R. Evid. 502, which provides:

> When made in a federal proceeding or to a federal office or agency, [a] disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26 (b)(5)(B).

Fed. R. Evid. 502(b); *see also In re Grand Jury Proc.*, 219 F.3d at 183 (endorsing approach subsequently codified in Fed. R. Evid. 502(b)). Application of these factors, although a closer call, supports a conclusion that Warburg did not waive its attorney-client privilege by producing the Subject Email to the government.

Warburg maintains it produced the Subject Email because a staff attorney during the production review process failed to consider the Subject Email in the context of the subsequent emails indicating the disclosure was inadvertent and promptly rectified. When Warburg became aware at Mr. Kronfol's deposition that the Subject Email had been produced, it immediately notified the government and requested the government sequester the Subject Email in accordance with the Federal Rules of Civil Procedure.[1] *See Aramony v. United Way of Am.*, 969 F. Supp. 226, 237 (S.D.N.Y. 1997) ("The period after the producing party realizes that privileged information has been disclosed is the

---

[1] While Fed. R. Evid. 502(b) references Fed. R. Civ. P. 26(b)(5)(B), the applicable rule in this case is Fed. R. Civ. P. 45(e)(2)(B), which uses identical language but applies to subpoenas.

9

relevant period for measuring whether the privilege has been waived."). Although Warburg did not realize its mistake until months after its production of the Subject Email, there were no "obvious indications that a protected communication or information has been produced inadvertently" and Fed. R. Evid. 502(b) "does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Fed. R. Evid. 502, advisory committee note. As soon as Warburg was aware that it had produced the Subject Email to the government, it took steps to rectify the error.

The parties disagree as to whether Warburg took reasonable steps to prevent disclosure in the first instance. This, too, is a close call. Relevant "non-determinative" considerations include the precautions taken, the number of documents reviewed, time constraints on production, the extent of disclosure, and overriding issues of fairness. *Id.*; *see also Gangi*, 1 F. Supp. 2d at 264 (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103 (S.D.N.Y. 1985)). The government emphasizes the limited number of documents produced and the lengthy amount of time it took to produce them. It faults Warburg for neither flagging the Subject Email as privileged before litigation, nor using analytic tools such as keyword searches to prevent its disclosure. The court agrees that Warburg's efforts were less than robust. In tacit acknowledgment, Warburg does not argue that it overlooked the Subject Email because of time constraints, the number of documents to review, or because it failed to search for references to counsel, but, instead, contends a staff attorney reviewed the Subject Email but failed to mark it as privileged because it had been sent to a third party. Warburg characterizes this as an understandable mistake because voluntary disclosure to a third party generally waives the attorney-client privilege. *See Pure Power Boot Camp*, 587 F. Supp. 2d at 563. It argues it was not unreasonable for the reviewing attorney to be unaware of Mr. Shui's subsequent emails reflecting the disclosure was inadvertent. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 2013 WL 2322678, at *6 (S.D.N.Y. May 21, 2013) (holding "failure to gather and code all emails in an email string, upon determining that any email in the

string contained privileged information, was not unreasonable").

"The mere fact of disclosure does not establish that a party's precautions undertaken to protect the privileged evidence were unreasonable." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 222 (S.D.N.Y. 2001). Record-by-record pre-production privilege review by an attorney remains a reasonable process, even in the age of electronic tools to aid discovery. *See In re Nat. Gas Commodity Litig.*, 229 F.R.D. 82, 86-87 (S.D.N.Y. 2005) (finding "reviews of the documents, by experienced attorneys, before the documents were produced" supports finding of reasonable precautions); *Lloyds Bank PLC v. Republic of Ecuador*, 1997 WL 96591, at *4 (S.D.N.Y. Mar. 5, 1997) (finding reasonable precautions where "attorneys reviewed the documents for the purpose of identifying documents protected by the attorney client privilege or the work product doctrine"); *Martin v. Valley Nat'l Bank of Arizona*, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992) ("[A]ttorneys reviewed all the documents for protected material before they were produced. These precautions were reasonable to prevent the disclosure and do not constitute a waiver."). The review process utilized by Warburg was not exemplary but was not "so lax, careless, inadequate or indifferent to consequences as to constitute a waiver." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. at 222 (quoting *Martin*, 1992 WL 196798, at *3).

The government's contention that interests of fairness favor a finding of waiver because it developed its investigatory and deposition strategies, especially for Mr. Kronfol's deposition,[2] based on the Subject Email does not alter the court's conclusion. The *qui tam* case is in its nascent phase, is currently stayed for settlement negotiations, and any reliance by the government to date is unlikely to play a significant role in that case's progression. The government itself arguably had reason to question its receipt of the Subject Email, which indisputably contains attorney advice and confidential communications. Any prejudice the government has suffered to date is thus relatively minor and outweighed by the public interest in preventing "litigation costs necessary to

---

[2] At this juncture, the court declines to decide whether the government may seek to impeach Mr. Kronfol's deposition testimony by referencing the Subject Email.

protect against waiver of attorney-client privilege" from becoming "prohibitive" by punishing parties for "innocent or minimal" mistakes, especially in the era of electronic discovery. Fed. R. Evid. 502, advisory committee note.

### 3. ModMed's Disclosure to the Government.

Finally, ModMed's separate production of the Subject Email through its counsel in a much larger cache of documents did not waive Warburg's privilege. ModMed is not "the holder of the privilege[,]" *Pure Power Boot Camp*, 587 F. Supp. 2d at 563, and Warburg reasonably relied on the representations of Attorney Fleisher that he had deleted the Subject Email without reading it. *See Davis v. Speechworks Int'l, Inc.*, 2005 WL 8173527, at *4 (W.D.N.Y. Feb. 11, 2005) (finding no waiver despite recipient's refusal to return inadvertently disclosed privileged document).

Because the disclosures of the Subject Email by Mr. Shui to Attorney Fleisher and by Warburg and ModMed to the government did not operate as a waiver of Warburg's attorney-client privilege, the government's motion to compel (Doc. 1) is DENIED.

### C. Whether This Case Should Be Sealed.

Warburg moves to seal the entire case pending further developments. The government contends limited redactions are sufficient to protect Warburg's attorney-client privilege. It argues that Warburg has no right to the information regarding its ModMed investigation, which it chose to disclose to the court to provide a factual context for its motion to compel.

Motions to seal must be evaluated in the context of the public's qualified right "to inspect and copy judicial records and documents." *Brown*, 929 F.3d at 49 (internal quotation marks omitted) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "Such documents are presumptively public so that the federal courts 'have a measure of accountability' and so that the public may 'have confidence in the administration of justice.'" *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)). "The 'presumption of access' to judicial records is secured by two independent sources: the First Amendment and the common law." *Id.* at 141 (citing

12

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006)); *see also Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013) ("Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law.").

"[A] court must first conclude that the documents at issue are indeed 'judicial documents.'" *Lugosch*, 435 F.3d at 119. "A 'finding that a document is a "judicial document" triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access.'" *Bernstein*, 814 F.3d at 141 (2d Cir. 2016) (alteration adopted) (quoting *Newsday LLC*, 730 F.3d at 167 n.15). The court must conduct a "particularized" and "individualized" review[,]" *Brown*, 929 F.3d at 51, and may only seal the "entire case file as 'a last resort[,]' such as when sealing is 'required by statute or rule or justified by a showing of extraordinary circumstances and the absence of narrower feasible and effective alternatives[.]'" *Doe v. Berg*, 2016 WL 11597923, at *1 (S.D.N.Y. Feb. 10, 2016) (quoting Judicial Conference of the United States, Judicial Conference Policy on Sealed Cases 3 (Sept. 13, 2011)).

Here, the court must justify "continued sealing" because "'maintaining [judicial documents] under seal, though a passive act, [i]s an active decision requiring justification[.]'" *Lugosch*, 435 F.3d at 124, 126 (quoting *United States v. Antar*, 38 F.3d 1348, 1363 (3d Cir. 1994)). The Second Circuit has emphasized "the importance of immediate access where a right to access is found." *Id* at 126.

### 1. Whether the Docket Sheet Should Remain Under Seal.

It is settled law in the Second Circuit that civil docket sheets are judicial documents. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004) ("[T]he media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings."). Because the presumption of public access to the docket sheet arises under the First Amendment, "the proponent of sealing must demonstrate that closure is essential to preserve higher values

and is narrowly tailored to serve that interest." *Bernstein*, 814 F.3d at 144 (alteration adopted) (internal quotation marks and citation omitted). "Broad and general findings and conclusory assertions are insufficient to justify deprivation of public access to the record; specific, on-the-record findings are required." *Id.* at 144-45 (alteration adopted) (internal quotation marks and citations omitted).

Warburg asserts sealing is necessary to protect its attorney-client privilege and privacy interests, as well as its rights in any future litigation. The Second Circuit has recognized that "the protection of attorney-client privilege" is a "higher value[.]" *Brown*, 929 F.3d at 47, 47 n.13 (internal quotation marks omitted) (citing *Lugosch*, 435 F.3d at 125; *SEC. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). Sealing the docket sheet, however, is not narrowly tailored to protect Warburg's attorney-client privilege because the docket sheet contains no privileged information.

The Second Circuit has recognized that "the privacy interest of those who resist disclosure" can be, in certain circumstances, a "higher value[.]" *Id.* Warburg claims a privacy interest in preventing disclosure of the government's investigation because it "has the potential to cause severe reputational and financial harm not just to ModMed, but to Warburg . . . , who will be—at the very least—associated with and even implicated in the investigation in the public's eyes." (Doc. 14 at 2.) However, the *qui tam* actions against ModMed and the government's decision to intervene have been unsealed and are matters of public record, as is Warburg's ownership stake in ModMed. The *qui tam* action in the Middle District of Tennessee has been unsealed since 2019. Against this backdrop, Warburg no longer has a significant privacy interest in preventing disclosure of the ModMed investigation.

Assuming *arguendo* the court could find a privacy interest, Warburg's "conclusory assertions" of reputational harm "are insufficient to justify deprivation of public access to the record[.]" *Bernstein*, 814 F.3d at 144-45 (alteration adopted) (internal quotation marks omitted). For this same reason, Warburg may not proceed under a pseudonym. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008) (holding court must weigh privacy interests supporting anonymity "against both

14

the public interest in disclosure and any prejudice" to other parties, and a key consideration is "whether the [party]'s identity has thus far been kept confidential") (citations omitted).

For the reasons stated above, the court hereby ORDERS that the docket sheet in this case be unsealed.

### 2.     Whether Sealed Filings Should Remain Under Seal.

The parties disagree as to whether certain filings should remain under seal. The court must first determine whether the filings are judicial documents which carry a presumption of public access. "A 'judicial document' or 'judicial record' is a filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Bernstein*, 814 F.3d at 139 (quoting *Lugosch*, 435 F.3d at 119). A document is relevant to the performance of the judicial function "if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision." *Brown*, 929 F.3d at 49 (footnote omitted).

The sealed filings at issue pertain to a discovery dispute. Documents which are only "passed between the parties in discovery" are not judicial documents. *Id.* at 50 (internal quotation marks omitted) (quoting *Amodeo*, 71 F.3d at 1050). Discovery motions, such as motions to compel, however, "call upon the court to exercise its Article III powers" and "[t]hus, all documents submitted in connection with, and relevant to, such judicial decision-making are subject to at least some [common law] presumption of public access." *Id.*

There are two "important exception[s] to this general rule[.]" *Id.* at 50, n.33. The first is that "the presumption of public access does *not* apply to material that is submitted to the court solely so that the court may decide whether that same material must be disclosed in the discovery process[.]" *Id.* (emphasis in original) (citing *TheStreet.Com*, 273 F.3d at 233); *cf. United States v. Wolfson*, 55 F.3d 58, 61 (2d Cir. 1995) ("We are not aware . . . of any common-law principle that documents submitted to a court *in camera*

15

for the sole purpose of confirming that the refusal to disclose them to another party was proper[] are to be deemed judicial records open to the public."). The Subject Email itself is thus not a judicial document. The second exception is that a filing which has been struck from the record is not "considered a 'judicial document' and would enjoy no presumption of public access." *Brown*, 929 F.3d at 52 (quoting *Amodeo*, 44 F.3d at 145). Docs. 1-2 to 1-9, 1-18, 12-1, 21-1, 21-2, 21-3, and 22-9 are therefore not judicial documents.

With the exception of the Subject Email (Doc. 1-2) and those documents which have been removed from the record, the filings in this case may "reasonably have the *tendency* to influence" the court's ruling on the government's motion to compel and are therefore judicial documents subject to a presumption of access. *Brown*, 929 F.3d at 49 (emphasis in original). The same is true for the transcript of the March 15, 2022 hearing. *See Newsday LLC*, 730 F.3d at 165 n.10. ("[R]elease of the transcript may be required even where closing the courtroom was justified given what might reasonably have been anticipated in advance.").

The Second Circuit has explained that, because "a court's authority to oversee discovery" is "ancillary to the court's core role in adjudicating a case[,]" the weight of the "presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment." *Brown*, 929 F.3d at 50. In this case, the entire proceeding is a third-party discovery dispute, ancillary to a *qui tam* suit to which Warburg is not a party. There is thus a "low presumption" of public access that "'amounts to little more than a prediction of public access absent a countervailing reason.'" *Brown*, 929 F.3d at 49-50 (quoting *Amodeo*, 71 F.3d at 1050); *see also Stern v. Cosby*, 529 F. Supp. 2d 417, 422 (S.D.N.Y. 2007) ("[I]f the transcript is filed for purposes of a motion to compel, the presumption that would attach to the transcript would be low."). Even for a "low presumption[,]" the court "must still articulate specific

16

and substantial reasons for sealing such material." *Brown*, 929 F.3d at 50.

The government seeks to redact its motion to compel to avoid disclosing certain aspects of its ongoing ModMed investigation. Warburg does not oppose these redactions insofar as they prevent public access.[3] In this case, "the danger of impairing law enforcement or judicial efficiency" outweighs the low presumption of access and supports granting the government's proposed redactions. *TheStreet.Com*, 273 F.3d at 232. The government's request to redact portions of its filing is therefore GRANTED.

To the extent Warburg asks the court to seal the *entire* case, it presents no "extraordinary circumstances" to justify foregoing "narrower feasible and effective alternatives[.]" *Berg*, 2016 WL 11597923, at *1 (internal quotation marks and citation omitted). Warburg's request to seal the entire case is DENIED.

Warburg gains more traction with its request for limited redactions. Warburg's interest in "the protection of attorney-client privilege" outweighs the presumption of public access because the public has no right to privileged information. *Brown*, 929 F.3d at 47, n.13 (citing *Lugosch*, 435 F.3d at 125). Warburg's request to make redactions to protect its attorney-client privilege is therefore CONDITIONALLY GRANTED.

Warburg is hereby ORDERED, within ten (10) days, to propose redactions to the filings and the March 15, 2022 hearing transcript consistent with this Order, provided they are no broader than necessary to protect its attorney-client privilege. *See id.* at 51 ("[T]he District Court can obtain the parties' assistance in effecting any necessary redactions[.]"). The government may also file any proposed redactions consistent with this Opinion and Order by the same deadline. The filings in question as well as the March 15, 2022 hearing transcript shall remain under seal until the court approves the proposed redactions.

### D.     Public Access to This Opinion and Order.

In this Opinion and Order, the court has provided only limited references to the

---

[3] The government also restricted Warburg's access to this information, which Warburg opposes. To the extent Warburg was not granted access during the parties' meet and confer, the issue is mooted by the denial of the government's motion to compel.

Subject Email's contents, sufficient to disclose to the public its general subject matter without disclosing the privileged information contained therein. This Opinion and Order shall therefore be available to the public without redaction.

## CONCLUSION

For the foregoing reasons, the court DENIES the government's motion to compel (Doc. 1) and GRANTS IN PART and DENIES IN PART the parties' motions to seal (Docs. 2, 4, 13, 14).

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 14th day of June, 2022.

Christina Reiss, District Judge
United States District Court